ZANNOTH *v.* C. H. MILES ADAMS AVENUE CORP.

SAME *v.* MILES.

1. GARNISHMENT—FRAUD—QUESTIONS REVIEWABLE—APPEAL AND ERROR.

Where garnishee defendant had settled its claim against principal defendant before garnishment writ was served, and there is no evidence of fraud in connection therewith, reasonableness thereof may not be inquired into on appeal from judgment in favor of garnishee defendant.

2. SAME.

Where it clearly appears that, at time garnishment writ was served on garnishee defendant, there was no liability on its part to principal defendant, trial court was right in so holding.

Appeal from Wayne; Chenot (James E.), J. Submitted April 5, 1933. (Docket No. 14, Calendar No. 36,355.) Decided May 16, 1933.

Separate garnishment proceedings by Robert E. Zannoth, receiver for the Netting Company, against Charles H. Miles and C. H. Miles Adams Avenue Corporation, principal defendants, and Albert Pick & Company, garnishee defendant. Cases consolidated for trial. From judgment for garnishee defendant, plaintiff appeals. Affirmed.

*Freeman, Jordan & Thomson (Frederick B. Darden,* of counsel), for plaintiff.

SHARPE, J. The Netting Company, a Michigan corporation, brought an action against the principal defendant, C. H. Miles Adams Avenue Corporation, on August 21, 1928, in the circuit court for the county of Wayne, and recovered a judgment by default on

October 17th of that year in the sum of $4,840.64 and $27.10 costs. On September 14, 1928, it sued out a writ of garnishment against the defendant, Albert Pick & Company, an Illinois corporation. This corporation filed a disclosure on October 30, 1928, stating that it was not indebted to the principal defendant and had no property, money, goods, chattels, credits, or effects in its hands, or under its control, belonging to it.

The issue framed to determine its liability came on for hearing before the trial court on June 3, 1931. In the meantime, the plaintiff, Robert E. Zannoth, had been appointed receiver for the Netting Company, and he was substituted as plaintiff in the action.

The proofs disclose that on February 11, 1927, the garnishee defendant entered into a written contract to sell to the C. H. Miles Adams Avenue Corporation certain furniture and equipment for the Belden Hotel in Detroit for the sum of $120,658.25. There was a down payment of $5,000, a note given for $23,000, due July 1, 1927, and paid before the service of the writ, and the balance was to be paid in monthly instalments.

On the same day an agreement was entered into between the principal defendant, referred to as "buyer," C. H. Miles personally, and the garnishee defendant, referred to as "seller," which, after reciting the fact that the foregoing agreement had been entered into, and that it should be supplementary thereto, provided for payments as in the former agreement and that the notes should be indorsed by Miles and that he should deposit with the garnishee defendant as collateral security for their payment 25,000 shares of the capital stock of the Miles Amusement Company. Upon performance

thereof the garnishee defendant agreed to deliver the merchandise to the buyer free and clear of all liens and to look to other persons and security for the payment of any unpaid balance thereon.

On the same day, the garnishee defendant executed an instrument in which, after reciting the purchase of said furniture and equipment, as above stated, and that it had accepted the notes of C. H. Miles as collateral security for the payment of the notes so given, it covenanted and agreed with the American Bond & Mortgage Company and the Union Trust Company of Detroit, as trustee under a mortgage given on the property of the principal defendant to secure certain bonds, to waive its right to a lien on said furniture and equipment for the purchase price thereof.

The merchandise was manufactured and shipped by the garnishee defendant to its representative in Detroit, and there stored. Max Kahn, who was acting as attorney for it in Detroit, testified that soon thereafter, and before the service of the writ of garnishment, Mr. Miles came to his office "and said he was unable to complete his contract," that he "would not be able to put up the stock to secure the balance of the equipment that he had agreed to put up;" that he sought to substitute other security but it was not accepted; that after further effort on his part "he said he was at the end of his rope on the hotel equipment and asked to be relieved of his contract. So we entered into an agreement to cancel his contract, applying his down payment on the damages;" that the merchandise was then put in shape and shipped back "and it was carried for quite a long time."

It appears that the equipment was afterwards sold to Lester Briggs of Detroit for an amount

which, after deducting the freight to and from Chicago and the insurance and damages to the furniture through handling, was more than $28,000 less than the purchase price above stated.

There is much other testimony in the record, but in our opinion the rights of the parties are dependent upon what we have stated. The garnishee defendant had a right to settle its claim against the principal defendant, and, as the settlement was perfected before the writ of garnishment was served, and there is no evidence of fraud in connection therewith, the reasonableness thereof may not be here inquired into. It clearly appears that at the time the writ was served there was no liability on its part to the principal defendant, and the trial court was right in so holding.

The plaintiff lays much stress upon the instrument delivered by the garnishee defendant to the mortgage company and the trust company as trustee. It appears that an action is pending in which it is involved. The plaintiff was not a party thereto, and no right accrued to it thereunder.

The judgment in favor of the garnishee defendant is affirmed.

McDonald, C. J., and Clark, Potter, North, Fead, Wiest, and Butzel, JJ., concurred.